986 So.2d 333 (2007)
David Mark HAVARD, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-KA-00603-COA.
Court of Appeals of Mississippi.
November 13, 2007.
Rehearing Denied March 25, 2008.
*334 David M. Read, Claude Pintard, Natchez, attorneys for appellant.
Office of the Attorney General by Deirdre McCrory, Jackson, attorney for appellee.
Before MYERS, P.J., BARNES and ROBERTS, JJ.
ROBERTS, J., for the Court.
¶ 1. A jury sitting before the Wilkinson County Circuit Court found David Havard guilty of negligently injuring others while driving under the influence in violation of Mississippi Code Annotated Section 63-11-30(5) (Rev.2004). The circuit court sentenced Havard to ten years in the custody of the Mississippi Department of Corrections with five years to serve followed by five years of probation. Havard filed unsuccessful post-trial motions for judgment notwithstanding the verdict or, alternatively, for a new trial. Aggrieved, Havard appeals and raises four issues, all of which are based on the prospect that error resulted from the makeup of the jury. Finding no error, we affirm.

FACTS
¶ 2. On October 25, 2004, Havard drove from his home in Gloster, Mississippi to Baton Rouge, Louisiana to watch his nephew play football for Louisiana State University (LSU). Along the way, he bought a pint of whiskey and some ice and picked up a friend. Havard and his friend arrived at LSU around 2:00 p.m. They socialized until the football game began at 7:00 p.m.
¶ 3. Due to inclement weather, Havard left the game early. Alone, Havard departed Baton Rouge around 8:30 p.m. Sometime between 9:45 p.m. and 10:25 p.m., Havard hit a car occupied by Paige McGraw and Alicia Whittington. Whittington suffered a contusion to her left knee, ligament damage in one ankle, nerve damage to her back and her leg, glass in her eye, and a bruised bladder. McGraw suffered a crushed left ankle, a compound fracture to her right ankle, a broken sternum, and a "slice down the middle of [her] forehead." Havard claimed he hydroplaned on wet pavement. Other witnesses, including law enforcement personnel, disputed that the road was wet enough for the car to have hydroplaned. On appeal, Havard does not contest that he was intoxicated.

PROCEDURAL HISTORY
¶ 4. The Wilkinson County Grand Jury returned an indictment against Havard and charged him with negligently causing the bodily injury of McGraw and Whittington while driving under the influence. Havard pleaded not guilty. Due to various reasons, the circuit court rescheduled Havard's trial five times. Havard does not raise any claims regarding his right to a speedy trial.
¶ 5. On June 29, 2005, the fifth rescheduled trial date, Havard filed more pretrial motions and an insufficient number of jurors reported for jury duty. Though the circuit clerk had issued summons for 176 prospective jurors, only twenty-four of those people reported for jury duty. Accordingly, the circuit court was forced to declare a mistrial and to reset Havard's trial date a sixth timethis time for October 6, 2005. On that date, though the circuit clerk issued summons for 180 potential jurors, only nine prospective jurors *335 reported for jury duty. The circuit court was forced to declare another mistrial. This time, however, the circuit court directed those nine people to re-appear for the February 2006 term of court.
¶ 6. As directed, those nine people appeared for jury duty. An additional twenty-four prospective jurors also reported. After voir dire, Havard moved to quash the jury panel on the basis that nine of the thirty-three members of the venire had been on the jury panel drawn for the previous court term. The circuit court noted that those nine jurors had been called for service previously, that they had not served on a jury, and that they reappeared at her instruction to ensure that there were enough jurors to impanel a jury. Accordingly, the circuit court overruled Havard's motion to quash the jury.
¶ 7. As mentioned, the jury found Havard guilty of felony driving under the influence and the circuit court sentenced Havard to ten years with five to serve followed by five years of probation. Aggrieved, Havard appeals.

ANALYSIS
¶ 8. Havard's first two issues are directly interrelated and they stem from the same set of operative facts. For brevity's sake, we will consider them with one analysis.

I. WHETHER HAVARD WAS DENIED THE RIGHT TO EFFECTIVELY CHALLENGE THE PETIT JURY.

II. WHETHER THE CLERK "RADICALLY DEPARTED" FROM THE STATUTORY METHOD FOR JURY SELECTION.
¶ 9. In his first two issues, Havard claims that reversible error resulted based on the jury panel. In particular, Havard asserts that the circuit court erred in the way it drew and summoned the jury. According to Havard, the circuit court violated the statutory method of drawing and summoning the jury as set forth in Mississippi Code Annotated Section 13-5-26 (Rev.2002). We find no merit to Havard's first two issues.
¶ 10. Havard's complaints are focused on the fact that the circuit court empaneled nine jurors who had been on the venire panel for the previous court term. Because there was an insufficient number of jurors to form a panel, the circuit court had those nine jurors return for service at the next term of court. After voir dire, Havard moved to quash the jury panel because nine of the thirty-three veniremen had been on the panel drawn for the previous court term. The circuit court stated:
It's the Court [sic] understanding that these jurors were summoned with the February 13th, I believe. That jury was not used and I asked Mr. Allen to have those persons to come back. And that's where those names came from. But I instructed him to put them at the end of the docket, because we had not used them, but they had appeared to insure that we had enough jurors. The Court is going to overrule your motion.
¶ 11. "The jury laws of this state are directory and the selection of the jury in an irregular manner does not render it illegal." De La Beckwith v. State, 707 So.2d 547, 597-98 (¶ 199) (Miss.1997) (quoting Rhone v. State, 254 So.2d 750, 752 (Miss.1971)). "Unless the defendant shows that the method used was fraudulent or a radical departure from the method prescribed by statute as to be unfair or the [sic] prevent due process of law, the appellate court will not reverse." Pratt v. State, 870 So.2d 1241, 1245 (Miss.Ct.App. 2004). Havard does not allege that any deficiency in jury selection resulted in prejudice to his case or that the nine jurors were not legally qualified to serve as jurors. Further, Havard does not argue *336 that the prosecution gained any particular advantage as a result of jury selection. The circuit court merely ordered the nine jurors who reported from the previous term to return for the next term. Those nine people did not sit on a jury during that previous term of court. There is absolutely no evidence that the jury was unfair or partial. Where there is no evidence to show that the defendant was not, in fact, tried by a fair and impartial jury, "error may not be predicated for an irregularity in drawing or impaneling the jury." Davis v. State, 660 So.2d 1228, 1261 (Miss. 1995) (quoting Taylor v. State, 148 Miss. 621, 626, 114 So. 390, 391 (1927)). We find no merit to Havard's first and second issues.[1]

III. WHETHER THE CIRCUIT COURT ERRED WHEN IT OVERRULED HAVARD'S CHALLENGE FOR CAUSE OF JUROR WILLIAM JEFFERSON.
¶ 12. During voir dire, William Jefferson stated that eight or nine years previously he had been in an automobile accident involving a drunk driver and had been injured. Havard challenged Jefferson for cause. The circuit overruled Havard's challenge and stated, "[t]he Court specifically asked Mr. Jefferson if he could lay aside all of that and decide the case based upon the evidence presented in Court today; and he said that he could. With that the Court's going to overrule that." Havard claims the circuit court erred.
¶ 13. Circuit courts have wide discretion in determining whether a potential juror should be excused as a result of bias. When a circuit court declines to excuse a juror after that juror responded that he or she would be able to serve impartially, despite circumstances that raise some question of bias, we defer to the circuit court's discretion. Duncan v. State, 939 So.2d 772 (¶ 22) (Miss.2006).
¶ 14. Jefferson unequivocally stated that he could serve impartially.
BY THE COURT: Mr. Jefferson, I didn't understand your answer, so I'm going to ask you this question: Can you decideif you're chosen as a juror in this particular case can you decide this case based upon the evidence and lay aside the fact that you had an accident with a drunk driver?
JEFFERSON: Yes, ma'am.
BY THE COURT: You can do that?
JEFFERSON: Yes, ma'am.
Considering that Jefferson responded that he could decide the case based purely on the evidence, we cannot find that the circuit court judge abused her discretion when she overruled Havard's challenge for cause. That is, under the circumstances, our standard of review requires that we defer to the circuit court's discretion. Accordingly, we find no merit to this assignment of error.

IV. WHETHER THE CIRCUIT COURT ERRED WHEN IT ALLOWED A MEMBER OF THE GRAND JURY WHICH INDICTED HAVARD TO SERVE ON THE PETIT JURY THAT CONVICTED HIM.
¶ 15. In this issue, Havard claims reversible error occurred when the same person, Kilesha Renay Andrews, served on the grand jury that indicted him and the petit jury that convicted him. According *337 to Havard, the very fact that Andrews served in both roles amounts to reversible error, despite the fact that he did not raise this issue during trial or in his post-trial motions. Havard claims that he was unaware of Andrews' dual roles. Where a party is unaware that an individual served on both an indicting grand jury and a convicting petit jury, that party does not waive any claimed error by failing to assert the issue before the trial court. See Hood v. State, 523 So.2d 302, 310 (Miss. 1988).[2]
¶ 16. After Havard perfected his appeal, the circuit court allowed Havard to supplement the record to include a list of the names of the February 2004 grand jurors. As such, the record contains a list of what appears to be twenty grand jury members, but there is no sponsoring testimony incident to that list. In any event, Kilesha Renay Andrews is listed as one of the twenty grand jurors. A person with the same name served on the petit jury. There is no way for us to determine whether these two names refer to one single person or two people with the same name.
¶ 17. If grand juror Andrews was the same person as petit juror Andrews, it appears that she did not remember indicting Havard. During voir dire, the circuit court and the prosecution asked the venire panel whether anyone had any personal knowledge of the facts of the case or if they had been talked to about the facts of the case. Andrews did not respond. Over two years had elapsed between the grand jury proceedings and the actual trial. If prospective juror Andrews is one and the same person as grand juror Andrews from two years previously, she simply may have completely forgotten that this case had been presented to her while she sat on the grand jury.
¶ 18. What is more, even if we assumed the Andrews that sat on the grand jury was the same Andrews that sat on the petit jury, we are unable to determine whether Andrews took part in the grand jury deliberations incident to the indictment against Havard. In the discretion of the court, the number of grand jurors sufficient to return an indictment may be between fifteen and twenty people. Miss. Code Ann. § 13-5-41 (Miss.2002). It is very well possible that Andrews sat on the grand jury that returned the indictment against Havard, but it is not certain or definite. The indictment only contains the signature of the foreman of the grand jury, and that person was not Andrews. It is not unusual for grand jury proceedings to last multiple days. Likewise, it is not unusual that individual grand jurors may be excused from time-to-time during the proceedings for personal reasons, such as doctor appointments, dentist appointments, or family emergencies. It is only necessary that the grand jury maintain the requisite number of members (fifteen) to cast a sufficient number of votes (twelve) *338 to return a true bill of indictment.[3] Based on the record before us, we cannot determine whether all twenty grand jurors deliberated over Havard's indictment.
¶ 19. An appellate court must have a record which shows, affirmatively or negatively, the facts of a case. Hudson v. State, 891 So.2d 260 (¶ 10) (Miss.Ct.App. 2004). The record before us is insufficient to find any merit to the asserted error. The State concedes, and we agree, that a post-conviction relief proceeding may provide a means for Havard to expand the record and put forth newly discovered evidence showing the same individual sat on the grand jury proceedings leading to his indictment and his trial on the merits. See Miss.Code Ann. §§ 99-39-17 and XX-XX-XXX (Rev.2000). Accordingly, we dismiss this issue without prejudice so that, if he chooses, Havard may raise this issue in a post-conviction relief proceeding.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF WILKINSON COUNTY OF CONVICTION OF FELONY DUI-NEGLIGENT INJURY AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FIVE YEARS TO SERVE AND FIVE YEARS OF PROBATION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR.
NOTES
[1] It is noteworthy that, effective January 1, 2008, the Mississippi Legislature has amended Mississippi Code Annotated Section 13-5-33 to allow a juror to postpone jury service for no more than six months or two terms of court "after the date on which the prospective juror originally was called to serve and on which date the court will be in session, whichever is the longer period."
[2] It bears mentioning that the precise individuals who serve on grand juries are normally matters of public record. See Valentine v. State, 396 So.2d 15 (Miss. 1981). A brief trip to the circuit clerk's office may alert counsel to the fact that a member of the indicting grand jury has also been summoned to serve as a member of the venire for petit jury service. The fact that an individual named Kilesha Renay Andrews was sworn as one of the grand jurors for the February 2004 term of court should have been a public record for over two years in the clerk's office. When Havard's counsel accepted Andrews as a juror, he still had two remaining peremptory strikes available. He chose not to exercise a peremptory challenge on her. Based on the current record, we cannot conclude whether Havard knew of this and chose Andrews anyway. If it could be demonstrated that counsel was aware of such and failed to bring it to the circuit court's attention, we would not hesitate to find that a party waived his right to bring a similar issue for the first time on appeal.
[3] It is not necessary that members of a grand jury unanimously vote to return an indictment. Instead, "[t]he concurrence of twelve of the grand jurors shall be necessary to the finding of an indictment or making a presentment." Miss.Code. Ann. § 99-7-11 (Rev. 2000).